IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

EAGLE ONE ELECTRIC CORP.    )
                            )
v.                          )   NO. 3:05-00804
                            )   JUDGE CAMPBELL
METROPOLITAN NASHVILLE      )
AIRPORT AUTHORITY           )

## MEMORANDUM

Pending before the Court is Defendant Metropolitan Nashville Airport Authority's Motion to Dismiss (Docket No. 9). For the reasons stated herein, Metropolitan Nashville Airport Authority's Motion to Dismiss (Docket No. 9) is DENIED.

Also pending before the Court is Defendant Metropolitan Nashville Airport Authority's Motion to Stay Proceedings Pending Resolution of Motion to Dismiss (Docket No. 14) and Joint Motion for Additional Briefing Regarding Authority's Motion to Dismiss (Docket No. 17). Defendant's Motion to Stay (Docket No. 14) is DENIED as moot and Joint Motion for Additional Briefing (Docket No. 17) is DENIED as moot.

## FACTS

Plaintiff, Eagle One Electric Corp. ("Eagle One"), is a Tennessee corporation with its principal place of business located at 9066 Highway 100, Nashville, Tennessee 37221 (Docket No. 5 at 1). Eagle One is a subcontractor primarily engaged in electrical construction (Docket No. 5 at 2). Defendant, Metropolitan Nashville Airport Authority ("Airport Authority"), is a public agency created by the Metropolitan Government of Nashville and Davidson County, Tennessee (Docket No. 5 at 1).

Eagle One alleges in its First Amended Complaint (Docket No. 5) (the "Complaint") that

it was selected by Lojac, Inc. ("Lojac"), a general contractor, to perform electrical work on Airport Authority projects 0472 and 0477 (collectively the "Project") on which Lojac had been selected as the successful bidder (Docket No. 5 at 2). Subsequent to Lojac awarding Eagle One the contract for electrical work, the Airport Authority informed Lojac that Eagle One could not be used as the electrical subcontractor on the Project (Docket No. 5 at 2). Despite inquiries from Eagle One and Lojac, the Airport Authority has refused to explain why it will not allow Eagle One to work on the Project when Eagle One has previously performed work for the Airport Authority without incident (Docket No. 5 at 2). As a result of the Airport Authority's actions, Eagle One contends that it has been unjustifiably debarred from performing work on federally funded Airport Authority projects and has sustained losses in excess of $100,000.00 (Docket No. 5 at 3).

Eagle One's Complaint alleges causes of action for denial of due process in violation of the Fourteenth Amendment to the United States Constitution, tortious interference with contract and tortious interference with business relationships (Docket No. 5 at 3-4).

In response to the allegations in Eagle One's complaint, the Airport Authority has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 9).

## MOTION TO DISMISS

The purpose of Rule 12(b)(6) of the Federal Rules of Civil procedure is to test whether Plaintiff has stated a claim upon which relief may be granted. <u>Tennessee Protection and Advocacy v. Bd. of Educ. of Putnam County, Tennessee</u>, 24 F. Supp. 2d 808, 813 (M.D. Tenn. 1998). "Under Rule 12(b)(6), a complaint may be dismissed 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Id</u>.

2

(quoting Michigan Bell Telephone Co. v. MFS Internet of Mich., Inc., 16 F. Supp. 2d 817, 822-23 (W.D. Mich. 1998)). "The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. The Court, however, need not accept as true legal conclusions or unwarranted factual inferences."

ANALYSIS

1. Procedural Due Process Claim.

In support of its motion to dismiss, the Airport Authority argues that Eagle One's procedural due process claim must fail because Eagle One has not identified any state law that vests a property interest in parties seeking to subcontract on government construction contracts. More specifically, the Airport Authority asserts that Eagle One has failed to identify any provision of the Tennessee Constitution or state law that vests any interest in parties seeking to subcontract on government construction contracts because none exists. In addition, the Airport Authority asserts that its contract with Lojac gives it the unilateral right to reject any subcontractor on Airport Authority projects and refers the Court to Exhibit A to Eagles One's First Amended Complaint (Docket No. 5), which is a letter between Iftikhar Ahmad ("Ahmad"), Vice President of Planning for the Airport Authority, and Glen Chambers of Lojac. The letter indicates that it is a response to Lojac's inquiry whether the Airport Authority objects to its use of Eagle One as electrical subcontractor on the Project. The letter further indicates that pursuant to the Airport Authority's contract with Lojac, the Airport Authority has the contractual right to object to Lojac's utilization of Eagle One on the Project, and notifies Lojac of the Airport Authority's objection to the utilization of Eagle One on the Project.

In response to the Airport Authority's argument that Eagle One has failed to identify any

3

state law that vests a property interest in parties seeking to subcontract on government construction contracts, Eagle One responds by asserting that it has a protected property interest in being able to perform work on the Project by virtue of the Airport Authority's selection of Lojac as the successful bidder on the Project and the Airport Authority's awareness that Lojac had subcontracted with Eagle One at the time of the award. In addition, Eagle One asserts that it has a liberty interest in its right to contract on the Project.

The Fourteenth Amendment to the United States Constitution provides that "no State shall deprive ... any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. There are two elements of a procedural due process claim: (1) the existence of a constitutionally protected property or liberty interest; and (2) a deprivation of this interest without adequate process. See, Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); Bd of Regents v. Roth, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The first step in determining whether a procedural due process claim exists is to identify a protected property or liberty interest. Once a protected property or liberty interest is identified, the inquiry then becomes whether the deprivation of that interest contravenes the notion of due process. Thomas v. Cohen, 304 F. 3d 563, 576 (6th Cir. 2002). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...'" Loudermill, 105 S. Ct. at 1491 (quoting Roth, 92 S. Ct. at 2709). "A protected liberty interest goes beyond freedom from bodily restraint; it includes the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge and to enjoy generally those privileges long recognized as essential to the orderly pursuit of happiness

4

by free men." Roth, 92 S. Ct. at 2706-2707.

The Court finds that based on the pleadings alone, it is unable to determine at this time whether or not Eagle One has a protected property interest in the right to subcontract on the Project. While the Airport Authority's contract with Lojac may give it the unilateral right to object to Lojac's utilization of Eagle One on the Project, the Court is simply unable to make such a determination based upon the allegations as set forth by Eagle One in the Complaint and without the opportunity to review a copy of the contract and bid proposal between Lojac and the Airport Authority.

Accordingly, construing the facts as alleged in the First Amended Complaint in a light most favorable to Eagle One, the Airport Authority's Motion to Dismiss (Docket No. 9) with respect Eagle One's procedural due process claim is DENIED.[1]

2. Intentional Interference with a Contract.

The Airport Authority also argues that Eagle One's claim for intentional interference with a contract fails because Eagle One does not allege that the Airport Authority acted maliciously. Under Tennessee law, to be liable for inducement to breach a contract, both at common law and under Tenn. Code Ann. §47-50-109, the following elements must be proved: (1) there was a legal contract; (2) the wrongdoers had sufficient knowledge of the contract; (3) the wrongdoers intended to induce its breach; (4) the wrongdoer acted maliciously; (5) the contract was breached; (6) the act complained of was the proximate cause of the breach; and (7) damages resulted from the breach. TSC Industries, Inc. v. Tomlin, 743 S.W. 2d 169, 173 (Tenn.

---

[1] Given the Court's determination regarding Eagle One's alleged property interest in the right to sub-contract on the Project, the Court finds it unnecessary at this time to address Eagle One's argument that it also had a liberty interest in its right to contract on the Project.

5

Ct. App. 1987). See also, McGaugh v. Galbreath, 996 S.W. 2d 186, 193 (Tenn. App. Ct. 1998); Hodges v. Reid, 836 S.W. 2d 120, 123-124 (Tenn. Ct. App. 1992).

In response to the Airport Authority's allegations, Eagle One asserts that malice, improper motive and improper means are inferred from the complaint as a whole, or, alternatively, the Federal Rules of Civil Procedure simply require notice pleading and do not require a plaintiff to set out all the facts upon which it bases its claim.

The Court finds that, when viewed in a light most favorable to Eagle One, Eagle One's Complaint alleges facts with sufficient specificity to support a claim of procurement of breach of contract either at common law or under Tenn. Code Ann. §47-50-109.

Accordingly, the Airport Authority's Motion to Dismiss (Docket No. 9) Eagle One's claim for intentional interference with a contract at common law or under Tenn. Code Ann. §47-50-109 is DENIED.

3. Interference with Business Relationship.

Finally, the Airport Authority argues that Eagle One's claim for interference with a business relationship fails because Eagle One also does not allege the Airport Authority acted with improper motive or improper means in connection with this claim.

Tennessee law recognizes the tort of intentional interference with a business relationship. In order to demonstrate a cause of action for intentional interference with a business relationship, a plaintiff must show: 1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; 2) a defendant's knowledge of that relationship and not a mere awareness of a plaintiff's business dealings with others in general; 3) a defendant's intent to cause the breach or termination of the business relationship; 4)

6

a defendant's improper motive or improper means, and 5) damages resulting from the tortious interference.  Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W. 3d 691, 701 (Tenn. 2002).

Again, in response to the Airport Authority's assertions, Eagle One argues that the Federal Rules of Civil Procedure do not require a plaintiff to set out all the facts upon which it bases its claim and its Complaint sets out sufficient facts to support all the material elements of a claim for interference with a business relationship under Tennessee common law.

The Court finds that, as with Eagle One's claim for intentional interference with a contract, when viewed in a light most favorable to Eagle One, Eagle One's Complaint alleges facts with sufficient specificity to support a claim tortious interference with a business relationship under Tennessee common law.

Accordingly, the Airport Authority's Motion to Dismiss (Docket No. 9) Eagle One's Tennessee common law claim for tortious interference with a business relationship is DENIED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

7

Case 3:05-cv-00804   Document 18   Filed 12/29/05   Page 7 of 7 PageID #: 129